WICKES v. The CIRCASSIAN. See Cases Nos. 2,720a and 2,726.

---

## Case No. 17,611.

### WICKHAM v. BLIGHT.

#### [Gilp. 452.] 1

District Court, E. D. Pennsylvania. May 9, 1834.

WAGES OF SEAMEN—DETERMINATION OF AMOUNT.

1. The court will be very reluctant to get rid, by any equitable or convenient construction, of the unequivocal provisions of the act of 20th July, 1790, which oblige a master who carries out a seaman, without first making a written contract, to pay him the highest wages of the port at which he shipped.

[Cited in The Atlantic, Case No. 620.]

2. Where shipping articles have been signed by a seaman and delivered to the master, and the amount of wages is omitted by mistake or accident, without fraud, it is competent to either party to show, by parol testimony, what the contract was in relation to wages.

[Cited in The Antelope, Case No. 484.]

---

1 [Reported by Henry D. Gilpin, Esq.]

The libel in this case, which was filed on the 28th April, 1834, set forth that the libellant [Marine T. Wickham] signed an agreement on the 5th December, 1832, to perform a voyage in the ship Eliza, from Philadelphia to Canton and back. The libellant does not allege that any rate of wages was stated in the agreement, but declares that he faithfully performed his duty during the voyage, and that by reason of his services the sum of one hundred and twenty-eight dollars and sixty-six cents is due. The respondent [William P. Blight, owner of the ship Eliza], in his answer, admits the signing of the shipping articles and the performance of the services, but alleges that the libellant was received on board the vessel before her departure at his own request, for the purpose of acquiring a knowledge of seamanship, and that he agreed to perform the voyage without wages, and signed the articles accordingly.

It appeared that the shipping articles, which were produced by the respondent, had been regularly signed by the libellant, but that no amount of wages was stated; thereupon the counsel for the libellant offered to give parol evidence of the rate of wages at which he shipped. To this evidence the counsel for the respondent objected.

Mr. Badger, for libellant.
Mr. Dunlap, for respondent.

HOPKINSON, District Judge. This is a libel for wages for services as a seaman on board the ship Eliza, on a voyage from Philadelphia to Canton, and back to Philadelphia. The libellant signed the shipping articles, but no rate of wages was carried out or inserted in the column prepared for that purpose, nor in any other part of the articles. The libellant offers to prove, by parol evidence, the rate of wages for which he shipped, and the proof is objected to by the respondent.

The questions now to be decided are on this objection. (1) Does this omission or imperfection in the articles so destroy their whole effect, that there is no agreement in writing made between the seaman and the master of the vessel? (2) Is it an agreement in writing to render the services without wages? (3) Is the omission to be considered a fraud or mistake which may now be supplied by parol evidence?

In the first case, that is, of a seaman taken and carried out without a contract in writing being first made and signed by the seaman, it is declared by the act of congress, that the master shall pay to such seaman, the highest price of wages, which shall have been given at the port or place where such seaman shall have been shipped, for a similar voyage, within three months next before the time of such shipping; and a penalty is also inflicted on the master, and the seaman is declared not to be bound by the regula-

tions, nor subject to the penalties or forfeiture specified in the act. The construction or intent of this enactment is thrown into some uncertainty, by a difference of opinion between two learned and experienced admiralty judges. In the case of Jameson v. The Regulus [Case No. 7,198], Judge Peters said that he has been of opinion that the agreement of the parties, though verbal, supersedes the provision of the law, that an unarticled seaman shall be paid the highest wages. Of course, he construes the act to mean, that such wages shall be paid only where there has been no agreement whatever between the seaman and the master, and does not extend it to the case where the agreement has not been made in writing: that is, he thinks that where there has been an agreement for the rate of wages, it may be proved and shall be received as the contract of the parties, and govern the case, although not made in writing. Judge Story (Abb. Shipp. 433) does not seem to be satisfied with this opinion, although he does not expressly repudiate it, nor was he called upon to do so. He says, no case is referred to, where such a decision has been made, and that it requires very grave consideration, how far such a verbal agreement should be admitted to supersede the positive directions of the statute as to the highest wages. I shall leave this question as it stands, between these learned judges, until a case shall occur in which it will be required of me to decide it; only intimating, as I have done on other occasions, my strong reluctance to get rid of the plain and unequivocal language of the statute, by equitable or convenient constructive limitations or modifications. But I cannot say, in this case, that the contract is absolutely not in writing. The articles are signed by the seaman, and delivered to the master. The difficulty is, to say what it is in respect to the wages. It is a clear and written contract on every other subject. It is an imperfect written contract.

2. Can we consider this omission to state the rate of wages, this blank not filled in the articles, as an affirmative contract that the libellant agreed to serve without wages? This is the defence taken in the respondent's answer, and not that there was no written agreement. It is true, that such agreements are sometimes made by novices, who are desirous of obtaining instruction and experience in the business and duties of a seaman; and when it so appears in the contract when such intention is declared, there is nothing unreasonable in it, to bring it into question. But I cannot infer it from a mere omission, and that by the master himself, or the mate, whose duty it was to make the contract complete, and to state,

that the services were to be given without wages, if such were the fact. I cannot make an affirmative contract out of a negative circumstance, which admits of another explanation or interpretation. The seaman was called upon merely to sign his name to the articles; he did so. All the rest it was the duty of the master to do in the manner prescribed by the act of congress; and, if there was a contract for wages, he shall not escape from it, and have the services of the seaman without compensation, by omitting or neglecting to put that contract in writing.

3. The last view of the case is, was the omission a fraud or mistake, and if so, may it not be supplied or rectified by parol evidence? Is it not an ambiguity, which may be explained? In Pennsylvania (Dinkle v. Marshall, 3 Bin. 587) declarations of a grantor, even in the case of a deed (and this is not an instrument of that legal solemnity, but a personal contract), at and immediately before the sealing and delivery, are admitted to show the intention of the parties, so far in contradiction of the deed, as to prove that the grantor did not intend to convey, what might be included in the description of the deed. Evidence may also be given to prove what passed before and at the time of the execution of the deed, if the party offering the evidence alleges fraud or mistake in the transaction. In the case of Abbot v. Massey, 3 Ves. 148. a bequest was made to Mrs. G., and the chancellor referred it to the master to receive evidence to show who was intended by the initial. So where the surname was given in a will, but not the Christian name, the party claiming a legacy was allowed to produce parol proof (Price v. Page, 4 Ves. 680), and, where in an agreement to deliver goods, there is a blank for the quantity, parol evidence may be admitted to show the quantity. It could not be evidence to contradict any part of the written agreement, but merely to supply an omission. Phil. Ev. 475.

I consider the omission to put the rate of wages into this contract, or to state expressly that the libellant was to serve without wages as an omission, a mistake on the part of the master himself, and without any fault on the part of the seaman, and that it is now competent for either party to show what the contract was in relation to wages, to supply the omission in the written agreement arising from this mistake. I am entirely satisfied that no fraud was intended by it.

HOPKINSON, District Judge, admitted the evidence.

Decree. That the libellant, Marine T. Wickham, recover and have paid to him the sum of sixty dollars, with costs.